**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| FRESH MIX, LLC, <br><br> Plaintiff, <br><br> v. <br><br> PISANELLI BICE, PLLC, *et al.*, <br><br> Defendants. | Case No. 2:24-cv-00397-RFB-NJK <br><br> **ORDER** |

Before the Court are six motions to dismiss, two motions to strike, a motion for a preliminary injunction, a motion for a protective order, a motion to seal, a motion to compel, and a motion in support of the motion to seal. For the following reasons, the Court grants the first motion to dismiss and denies the remaining motions as moot.

**I. PROCEDURAL HISTORY**

On February 27, 2024, Plaintiff Fresh Mix LLC filed a Complaint. ECF No. 1. On March 12, Plaintiff filed an Amended Complaint which added new parties. ECF No. 8. Defendants were served by April 12. ECF Nos. 20-32, 36, 38.

On April 10, Defendants James P. Pisanelli, Pisanelli Bice, PLLC, Ava Marie Schaefer, and Debra L. Spinelli filed a motion to dismiss. ECF No. 34. On May 6, Defendants Jenna Brownlee, Ronald J. Cohen, Cohen Dowd Quigley PC, Betsy Lamm, and Daniel Quigley joined. ECF No. 60. On May 7, Defendants Samuel A. Schwartz and Schwartz Law, PLLC joined. ECF No. 61. Plaintiff responded on May 8. ECF No. 63. Defendants replied on May 22, 2024. ECF No. 80. The same day, Defendants also filed a Motion to Strike the Response. ECF No. 81. Defendants

Jenna Brownlee, Ronald J. Cohen, Cohen Dowd Quigley PC, Betsy Lamm, and Daniel Quigley joined. ECF No. 93. Plaintiff responded to the Motion to Strike on May 29. ECF No. 87. Defendants replied on June 5. ECF No. 98.

On April 30, Defendants Zachariah Larson and Larson & Zirzow, LLC filed a motion to dismiss. ECF No. 42. On April 30, Defendants James P. Pisanelli, Pisanelli Bice, PLLC, Ava Marie Schaefer, and Debra L. Spinelli joined. ECF No. 44. On May 6, Defendants Jenna Brownlee, Ronald J. Cohen, Cohen Dowd Quigley PC, Betsy Lamm, and Daniel Quigley joined. ECF No. 60. On May 7, Defendants Samuel A. Schwartz and Schwartz Law, PLLC joined. ECF No. 61. Plaintiff responded on May 14. ECF No. 69. Defendants replied on May 31. ECF No. 88.

Defendant Brownstein Hyatt Farber Schreck LLP filed a motion to dismiss on May 3. ECF No. 46. On May 3, Defendants James P. Pisanelli, Pisanelli Bice, PLLC, Ava Marie Schaefer, and Debra L. Spinelli joined. ECF No. 48. On May 6, Defendants Jenna Brownlee, Ronald J. Cohen, Cohen Dowd Quigley PC, Betsy Lamm, and Daniel Quigley joined. ECF No. 60. On May 7, Defendants Samuel A. Schwartz and Schwartz Law, PLLC joined. ECF No. 61. Plaintiff responded on May 17. ECF No. 71. Defendants replied on June 4. ECF No. 95.

Defendants Jenna Brownlee, Ronald J. Cohen, Cohen Dowd Quigley PC, Betsy Lamm, and Daniel Quigley filed a motion to dismiss on May 3. ECF No. 51. On May 7, Defendants Samuel A. Schwartz and Schwartz Law, PLLC joined. ECF No. 61. On May 10, Defendants James P. Pisanelli, Pisanelli Bice, PLLC, Ava Marie Schaefer, and Debra L. Spinelli joined. ECF No. 66. Plaintiff responded on May 17. ECF No. 73. Defendants replied on June 3. ECF No. 92.

Defendant Samuel A. Schwartz filed a Motion to Dismiss on the same day. ECF No. 53. On May 6, Defendants Jenna Brownlee, Ronald J. Cohen, Cohen Dowd Quigley PC, Betsy Lamm, and Daniel Quigley joined. ECF No. 60. On May 10, Defendants James P. Pisanelli, Pisanelli Bice, PLLC, Ava Marie Schaefer, and Debra L. Spinelli joined. ECF No. 66. Plaintiff responded on May 17. ECF No. 74. Defendant replied on June 3. ECF No. 90.

Defendants Bruce A. Leslie, Chtd., and Bruce A. Leslie filed a Motion to Dismiss on May 6. ECF No. 57. On May 6, Defendants Jenna Brownlee, Ronald J. Cohen, Cohen Dowd Quigley PC, Betsy Lamm, and Daniel Quigley joined. ECF No. 60. On May 7, Defendants Samuel A.

Schwartz and Schwartz Law, PLLC joined. ECF No. 61. On May 10, Defendants James P. Pisanelli, Pisanelli Bice, PLLC, Ava Marie Schaefer, and Debra L. Spinelli joined. ECF No. 66. Plaintiff responded on May 20. ECF No. 76. Defendants replied on May 28. ECF No. 85. The same day, Defendants also filed a Motion to Strike. ECF No. 86. Defendants Zachariah Larson, Larson & Zirzow, LLC joined the Motion to Strike. ECF No. 89. So did Defendants Samuel A. Schwartz, Schwartz Law, PLLC (ECF No. 91) and Defendants Jenna Brownlee, Ronald J. Cohen, Cohen Dowd Quigley PC, Betsy Lamm, Daniel Quigley (ECF No. 93). Plaintiff responded on June 5. ECF No. 97. Defendant replied on June 12. ECF No. 100. Defendants Zachariah Larson, Larson & Zirzow, LLC joined in the reply. ECF No. 103.

On June 12, 2024, Magistrate Judge Koppe granted a motion to stay discovery. ECF Nos. 96, 99. On November 13, 2024, Plaintiff filed a Motion for Preliminary Injunction (ECF No. 109) and an Emergency Motion to Shorten Time (ECF No. 110). Plaintiff also filed a Declaration in support. ECF No. 111. Defendants Pisanelli Bice, PLLC, James P. Pisanelli, Ava Marie Schaefer, and Debra L. Spinelli responded on the same day. ECF No. 112. Plaintiff replied two days later. ECF No. 113. Judge Mahan issued an Order denying the Emergency Motion to Shorten Time. ECF No. 114. Defendants Pisanelli Bice, PLLC, James P. Pisanelli, Ava Marie Schaefer, and Debra L. Spinelli responded on November 26. ECF No. 115. Plaintiff replied on December 3. ECF No. 116. The case was reassigned to this Court on December 10. ECF No. 118.

On February 28, Defendants Bruce A. Leslie Chtd. and Bruce A. Leslie filed a motion for a protective order. ECF No. 119. Plaintiff responded on March 14 and filed a cross motion to compel. ECF Nos. 120, 124. The same day, Plaintiff filed a motion to seal. ECF No. 122. ON March 27, Plaintiff replied. ECF No. 128. On March 28, Defendants Bruce A. Leslie and Bruce A. Leslie, Chtd. Filed an unopposed motion in support of Plaintiff's motion to seal. ECF No. 129.

The Court's Order follows.

II.     **FACTUAL ALLEGATIONS**

The following facts are taken from the Amended Complaint.

Lagudi Enterprises, LLC ("L-E") was founded in 2001 by Paul Lagudi. Get Fresh Sales, Inc. ("GFSI") was founded in 1991 by Dominic Caldara and John Wise. GFSI specializes in the

sale of food products to various businesses. GFSI, and its principals, Dominic Caldara ("Caldara"), Scott Goldberg ("Goldberg") and John Wise ("Wise"), reached an agreement with L-E, Lagudi, and William Todd Ponder ("Ponder") regarding a merger/acquisition, which resulted in the creation of Fresh Mix, LLC on January 11, 2010. GFSI received a 60% ownership interest in Fresh Mix and Lagudi and Ponder received a 40% ownership interest in Fresh Mix. Caldara, Goldberg, Wise, Lagudi, and Ponder all served as Managers of Fresh Mix. The parties also agreed that Lagudi and Ponder would be employed by Fresh Mix as President and Chief Operating Officer, respectively.

In late 2017 and early 2018, disputes arose between GFSI, on one hand, and Lagudi and Ponder, on the other, concerning the potential sale of the Get Fresh companies and the appropriate valuation of Fresh Mix. The parties retained counsel. On March 23, 2018, GFSI engaged Cohen Dowd Quigley, PC ("CDQ"). Ron Cohen, Betsy Lamm, and Daniel Quigley are all partners at CDQ. On April 12, 2018, Goldberg hired Bruce A. Leslie of Bruce A. Leslie, Chtd. ("BAL"). Both CDQ and BAL admitted to jointly representing GFSI and Get Fresh. On or about November 19, 2018, Pisanelli Bice PLLC began jointly representing Fresh Mix and GFSI. James J. Pisanelli and Debra L. Spinelli are both partners at Pisanelli Bice PPLC. Ava Schaeffer is an attorney at Pisanelli Bice. On or before December 6, 2019, Brownstein Hyatt Farber Schreck LLP ("BHFS") began jointly represented Fresh Mix and GFSI. Samuel A. Schwartz was a partner at BHFS, but left in February 2020, concluding BHFS's representation of GFSI. He continued representing Fresh Mix and GFSI via his new firm, Schwartz Law, PLLC.

In the fall of 2018, the parties attempted to mediate their differences, but mediation was unsuccessful. On or about November 26, 2018, Fresh Mix terminated the employment of Lagudi and Ponder at the direction of GFSI, Caldara, Goldberg, and Wise. On December 3, 2018, Lagudi and Ponder filed a Complaint against GFSI and Fresh Mix in the Eighth Judicial District Court for Clark County, Nevada, alleging claims for breach of contract, declaratory relief, and injunctive relief.

On February 1, 2019, the Nevada state court stayed the litigation and compelled arbitration of the claims pursuant to the arbitration agreement in the Fresh Mix Operating Agreement. On

February 19, 2019, GFSI and Fresh Mix filed a demand for arbitration against Lagudi and Ponder with the American Arbitration Association. An unsuccessful mediation took place on November 26, 2019.

On April 23, 2020, GFSI filed an Involuntary Petition against Fresh Mix in the United States District Court for the District of Nevada. Goldberg signed the Involuntary Petition on behalf of the sole Petitioner, GFSI, and Defendant Samuel A. Schwartz signed the Involuntary Petition as GFSI's counsel. On August 11, 2020, the Honorable Bruce T. Beesley granted the Involuntary Petition and instructed that the United States Trustee shall appoint a Chapter 7 Trustee, Leonard Schwartzer (the "Trustee"). On or about August 26, 2020, Zachariah Larson, a principal member of the law firm of Larson & Zirzow, LLC was hired as debtor counsel for Fresh Mix in the involuntary bankruptcy proceeding.

The Trustee ultimately aligned Fresh Mix's bankruptcy estate with Lagudi and Ponder's interests, and brought state law claims against GFSI, Caldara, Goldberg and Wise. A dispute with the Trustee concerning the turnover of legal files resulted in the filing of an adversary complaint against Pisanelli Bice on March 10, 2022. Several months later in September 2022, the Trustee and Pisanelli Bice filed competing motions for summary judgment in the adversary proceeding concerning the turnover of the law firm's legal files. On November 16, 2023, the Honorable Gary Spraker issued an order to show cause why the bankruptcy proceeding should not be dismissed under 11 U.S.C. § 105(a) and 707(a). Less than two weeks later, GFSI announced that they had reached a global settlement with Lagudi and Ponder that would resolve the state court litigation, the arbitration, and the bankruptcy proceeding. In exchange for mutual releases, GFSI agreed to pay $25 million to Lagudi and Ponder. GFSI agreed to deliver to Fresh Mix all of GFSI's rights, titles and interests in Fresh Mix rendering Lagudi and Ponder the sole owners of Fresh Mix. The settlement also provided that Fresh Mix would retain all rights to pursue claims against its prior counsel for their role in the arbitration, state court matters, and involuntary bankruptcy petition.

On January 22, 2024, Judge Spraker dismissed the bankruptcy proceeding with prejudice. Lagudi and Ponder, through Fresh Mix, commenced this action approximately one month later by filing the original Complaint against Defendants, which was subsequently amended on March 12,

- 5 -

2024 through the filing of the FAC.

In the FAC, Plaintiffs allege that the Defendants engaged in actions contrary to the rights and best interests of Fresh Mix, including, *inter alia*, by commencing arbitration for Fresh Mix and GFSI together, taking funds from Fresh Mix for legal services that were not rendered for Fresh Mix, assisting in defrauding Fresh Mix, engaging in unprofessional conduct to the detriment of Fresh Mix, breaching the Operating Agreement to harm Fresh Mix, recommending that Fresh Mix's assets be drained in order to facilitate the filing of an involuntary bankruptcy, providing legal advice that constitutes intentional misconduct, and participating in the filing of an abusive bankruptcy filing. These alleged facts provide the basis for Plaintiff's thirteen causes of action.

### III. LEGAL STANDARD

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678. The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

### IV. DISCUSSION

The Court now turns to the merits of Plaintiff's claims.

- 6 -

**A. Legal Malpractice (Counts I-Count VII)**

In the Amended Complaint, Plaintiffs bring seven causes of action for legal malpractice: Count I for aiding and abetting breach of fiduciary duty - legal malpractice against all Defendants; Count II for legal malpractice against Cohen Dowd Quickley, PC, Ronald J. Cohen, Betsy Lamm, Daniel Quigley, Jenna Brownless (collective "CDQ Defendants"); Count III for legal malpractice against Pisanelli Bice, PPLC, James J. Pisanelli, Debra L. Spinelli, Ava Schaeffer (collectively "PB Defendants); Count IV for legal malpractice against Bruce A. Leslie, Chtd, Bruce A. Leslie (collectively referred to as "BAL Defendants"); Count V for legal malpractice against Brownstein Hyatt Farber Schreck LLP ("BHFS"); Count VI for legal malpractice against all Schwartz Law, PPLC, Samuel A. Schwartz (collectively referred to as "SL Defendants"); and, finally, Count VII for legal malpractice against all Defendants. The Court dismisses Counts I-VII with prejudice because Plaintiff is foreclosed from bringing them under Nevada law.[1]

Defendants argue that, while the claims against them are brought in the name of Fresh Mix, Lagudi and Ponder are the parties bringing these claims, given their sole ownership of Fresh Mix, and as a former litigation adversary of Fresh Mix, the settlement between GFSI and Lagudi and Ponder served as a de facto assignment to them of the legal malpractice claims belonging to Fresh Mix. In response, Plaintiff argues that no assignment took place and that Lagudi and Ponder were not adversaries of Fresh Mix. The Court finds that the legal malpractice claims in this case constitute an impermissible assignment under Nevada law.

"Under Nevada law, the assignment of legal malpractice claims is generally prohibited[.]" Tower Homes v. Heaton, 377 P.3d 118, 121 (Nev. 2016). "As a matter of public policy, we cannot permit enforcement of a legal malpractice action which has been transferred by assignment . . . but

---

[1] Counts II-VII are pled as separate causes of action but are all based on the Defendants' alleged breach of their legal duties to Fresh Mix. The Court will not consider the various claims separately. Additionally, the Court finds that Count I's claim for breach of fiduciary duty is, in essence, a legal malpractice claim, since it is grounded on allegations that the Defendants breached certain duties, such as the Nevada Rule of Professional Conduct 8.4(a), pursuant to their attorney-client relationship with Fresh Mix. See Stalk v. Mushkin, 199 P.3d 838, 839 (Nev. 2009) (finding that "[a] claim for breach of fiduciary duty arising from an attorney-client relationship is a legal malpractice claim").

which was never pursued by the original client." Chaffee v. Smith, 645 P.2d 966, 966 (Nev. 1982). "The decision as to whether to bring a malpractice action against an attorney is one peculiarly vested in the client." Id. at 966.

    The Nevada Supreme Court specifically addressed the risk of assigning legal malpractice claims to adversaries in the same litigation which gave rise to the alleged malpractice. See Beavor v. Tomsheck, 519 P.3d 1260, 1263-64 (Nev. 2022). This is because "the assignment of a legal malpractice claim—or the proceeds of such a claim—to the adversary in the litigation that gave rise to the malpractice creates the opportunity and incentive for collusion in stipulating to damages in exchange for an agreement not to execute on the judgment in the underlying litigation." Id. at 1263. "In addition to the potential of collusion, the assignability of a malpractice claim to an adversary carries the risk that the malpractice claim will be used to settle a client's case." Id.

    The Nevada Supreme Court has not considered the narrower question of whether the transfer of shares between adversarial parties constitutes a de facto assignment. In the absence of a Nevada Supreme Court ruling, the Court finds the Nevada Court of Appeals' decision in Oceania Ins. Corp. v. Cogan is instructive here. 457 P.3d 276 (Nev. App. 2020). The court summarized the factual background in that case as follows: In prior litigation in federal court, one of the parties, Alutiiq, sued the other, Oceania. Id. at *1. Alutiiq ultimately prevailed, and Oceania assigned the majority of its shares to Alutiiq. Id. Oceania, under Alutiiq's new ownership, then brought suit in state court against the attorney and firm that had represented Oceania in the federal litigation, alleging legal malpractice and breach of fiduciary duty. Id. at *1. The court recognized that "Alutiiq's control over this litigation stems from its ownership interest in Oceania rather than from a direct assignment of the legal malpractice claim," but held that "the transfer of ownership to Alutiiq nevertheless constituted a de facto assignment of the claim[.]" Id. Therefore, "allowing Oceania in its current form to maintain this action would violate public policy in the same ways that a direct assignment would." Id.

    Similarly, here, the underlying litigation involved Plaintiffs, Lagudi and Ponder, litigating against GFSI and Fresh Mix. Years later, GFSI transferred the majority ownership of Fresh Mix to Lagudi and Ponder, along with $25,000,000. The settlement explicitly reserved Lagudi and

Ponder's right to bring claims against Fresh Mix's former counsel. As the Plaintiff pleads in the Amended Complaint, the settlement ensured that Fresh Mix would "retain all rights to pursue its former counsel for the malpractice claims and bad faith sanctions claims that mature with the conclusion of the arbitration and state court matters and the dismissal of the involuntary petition." Fresh Mix then filed the instant litigation against the attorney and law firm Defendants alleging legal malpractice and breach of fiduciary duty in connection with their prior representation of Fresh Fix. Though the Plaintiff in this case is not Lagudi and Ponder, they, as sole owners, are controlling the litigation. See id. at *3 (finding that since Alutiiq controlled the majority of Oceania's shares, it, "as majority shareholder . . . is essentially controlling the litigation in this case"). This settlement, which resulted in the transfer of ownership of Fresh Mix from GFSI to Lagudi and Ponder, who were GFSI's adversaries in the underlying litigation that gave rise to the alleged malpractice claims, constitutes a de facto assignment of Fresh Mix's legal malpractice claims against Defendants in violation of Nevada public policy. See Beavor, 519 P.3d at 1262 (finding that "[a]ssigning the proceeds of a legal malpractice claim to an adversary from the same litigation that gave rise to the malpractice claim violates public policy"); Oceania, 457 P.3d at *3 (finding that "although corporate entities generally retain their causes of action following a change in ownership, allowing [Fresh Mix] in its current form to maintain this action would violate public policy in the same ways that a direct assignment would").

Plaintiff advances two arguments as to why their claims for legal malpractice should not be dismissed. First, they argue that no assignment took place. As described above, Nevada law does not require "formalistic language" for a "valid assignment." See Tower Homes, 377 P.3d at 123 ("While the 2013 bankruptcy stipulation and order here do not explicitly use 'assigned,' such formalistic language is not required for a valid assignment."); see also Easton Bus. Opportunities, Inc. v. Town Exec. Suites, 230 P.3d 827, 832 (Nev. 2010) (finding that "there are no prescribed formalities that must be observed to make an effective assignment. The assignor must manifest a present intention to transfer its contract right to the assignee"). Therefore, the prohibition applies to any form of assignment, whether formal or de facto, to prevent the potential exploitation and commodification of legal malpractice claims. The sole Nevada case to specifically address whether

the transfer of shares between former adversaries constitutes a de facto assignment held that it did. See Oceania, 457 P.3d at *2 (holding that "the public policy considerations underlying the prohibition of assigning legal malpractice claims act to bar this legal malpractice action under the specific facts and circumstances presented here").

Next, Plaintiff argues that GFSI had to surrender its interest in Fresh Mix long before the conclusion of the state court, arbitration, and bankruptcy matters. In their opposition, Plaintiff alleges that, on November 2, 2021, GFSI was required to surrender its ownership stake in Fresh Mix to Lagudi and Ponder, which is two years prior to the eventual settlement. Defendants contest that this occurred at any point prior to the settlement and argue that Plaintiffs rely on facts beyond the Amended Complaint. Regardless, even if Lagudi and Ponder gained ownership of Fresh Mix in November 2021, that does not mean they were never adversaries to Fresh Mix. Lagudi and Ponder filed the state case on December 3, 2018, against both Fresh Mix and GFSI and remained adversaries in the resulting years of state court and arbitration disputes. That they allegedly gained ownership of Fresh Mix years later does not make their relationship to Fresh Mix any less adversarial, especially since the claims in this litigation concern the various Defendants' role in the state court litigation and the initiation of the bankruptcy proceedings, all of which took place before Lagudi and Ponder gained ownership of Fresh Mix and during the time when Fresh Mix's interests where aligned with GFSI.

Therefore, the Court finds that allowing Fresh Mix to retain their claim for legal malpractice following this change in ownership is a de facto assignment that violates Nevada public policy. The Court dismisses Counts I-IV with prejudice.

**B.  RICO Claims (Count X, Count XI, Count XII, Count XIII)**

Plaintiff has also pled three counts alleging violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and one count alleging a violation of the Nevada Racketeer Influenced and Corrupt Organizations Act. The alleged racketeering activities supporting Plaintiff's RICO claims stem from Defendants' representation of the GFSI parties in the underlying litigation against Lagudi and Ponder. The actions that Plaintiff challenges via the seven legal malpractice claims and four RICO claims can be distilled into an allegation that the

joint attorneys deceived their client, Fresh Mix, and breached their legal and professional duties. However, the Court has already held that such claims are foreclosed.

In the Amended Complaint, Plaintiff alleges that, beginning November 30, 2019, Defendants engaged in a pattern of racketeering activity to commit bankruptcy fraud. Plaintiff alleges that Defendant Schwartz and Schwartz Law PLLC oversaw the enterprise and the remaining Defendants worked alongside them to accomplish the common goal of utilizing bankruptcy to defraud and harm Fresh Mix. Plaintiff alleges that the Defendants undertook predicate acts in furtherance of the RICO scheme, including by, *inter alia*, filing documents with the court containing false statements as part of a bad faith filing, signing a false petition, advancing false claims and statements in the bankruptcy proceeding, directing witness not to answer questions in hinderance of the bankruptcy proceeding, turning over false financials to the Trustee, filing false declarations, and refusing to comply with a request for turnover of records. Plaintiff alleges that the racketeering enterprise has caused significant damage to Fresh Mix.

The alleged predicate acts all stem from Defendants' actions in the underlying litigation. As the Plaintiff itself summarizes in the Amended Complaint, having failed to accomplish their scheme through arbitration and having failed to accomplish their scheme through state court, the Defendants then brought the fraudulent bankruptcy petition. The section of the Complaint alleging the bad faith involuntary bankruptcy proceeding is titled "Defendants Plot Against Their Client, Fresh Mix." Therefore, the alleged scheme stems from harms that Defendants inflicted on their client, Fresh Mix.

However, the Court has already held that the GFSI-owned Fresh Mix is foreclosed from a de facto assignment of its claims to the current Lagudi-and-Ponder-owned Fresh Mix. Allowing Plaintiff to bring RICO claims predicated on the same actions as the legal malpractice claims would allow Plaintiff to circumvent Nevada's prohibition on the assignment of such claims. See Reynolds v. Tufenkjian, 461 P.3d 147, 150 (Nev. 2020) ("Nevada is one of several jurisdictions that prohibits the assignability of certain causes of action, regardless of how the assignment is accomplished."). After all, a party could simply style their "legal malpractice" claim as a "RICO claim" while alleging the same facts. Fresh Mix, under its new ownership, has no more of a right

under Nevada law to bring RICO claims predicated on alleged fraud that occurred during the course of an attorney-client relationship of which they were not a part, than they do to bring a legal malpractice claim. Since the right of a party to bring a suit derives from state law, and state law forecloses the assignment of both legal malpractice and fraud claims, a RICO claim founded on the same facts necessarily fails. See id. at 152 ("Nevada generally prohibits the assignment of tort claims on public policy grounds, as many tort claims are personal in nature and meant to recompense the injured party."); Prosky v. Clark, 109 P. 793, 794 (Nev. 1910) (finding that fraud claims are not assignable because they "are personal to the one defrauded").

The Nevada Supreme Court has gone to great lengths to describe the degree to which the assignment of such claims to someone other than the actual client "threatens the integrity of the highly personal and confidential attorney-client relationship and creates an incentive for the client to file a malpractice claim against the attorney and sell it to the highest bidder[.]" Beavor, 519 P.3d at 1261; see also id. at 1263 (noting the risk of converting legal malpractice claims into a commodity "transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty") (internal citation omitted). Not only could this undermine attorney-client relationships, but it also raises the specter that "a malpractice claim could be turned into a commodity to be exploited, which would encourage unjustified lawsuits against attorneys, increase legal malpractice litigation, and ultimately debase the legal profession." Id. at 1263. Therefore, the Court finds that Plaintiff's RICO claims, just like their legal malpractice, are dismissed with prejudice.

### C. Bankruptcy Fraud (Count VIII, Count IX)

Finally, Plaintiff alleges two malpractice claims based on bankruptcy fraud, Counts VIII and IX. Specifically, Plaintiff cites 11 U.S.C. § 303 (i), 28 U.S.C. §1927, and Fed. R. Bank. P. 9011 as the bases for its claims. Once again, the Court finds that Plaintiff may not maintain these claims. The alleged bankruptcy fraud is related to actions the Defendants took in representing Fresh Mix, whose legal claims may not be de facto assigned to Fresh Mix's new ownership. Additionally, the Court finds that the cited rules and statutes do not provide an independent cause of action and bankruptcy court is the appropriate forum in which to pursue the requested sanctions.

    **i.** *Section 303(i)*

In interpreting § 303(i) generally, the Ninth Circuit has held that "when an involuntary petition is dismissed on some ground other than consent of the parties and the debtor has not waived the right to recovery, an involuntary debtor's motion for attorney's fees and costs under § 303(i)(1) raises a rebuttable presumption that reasonable fees and costs are authorized." Higgins v. Vortex Fishing Sys., Inc., 379 F.3d 701, 707 (9th Cir. 2004). "11 U.S.C. § 303(i) provides the exclusive cause of action for damages predicated upon the filing of an involuntary bankruptcy petition." In re Miles, 430 F.3d 1083, 1091 (9th Cir. 2005).

This Court has found no case, and Plaintiff points to no case, in this circuit where Section 303(i) sanctions were requested as a cause of action in a separate proceeding from the underlying bankruptcy proceeding. Instead of bringing such a claim as an independent cause of action in district court, the Plaintiff may make its Section 303(i) request in connection with the underlying proceeding in the bankruptcy court.[2] The Court finds it would be inappropriate for a district judge to "examine the decisions of a bankruptcy judge or to review the conduct of attorneys before that judge," and hence a Section 303(i) award is best determined by the bankruptcy judge that presided over the involuntary petition. See Raymark Indus., Inc. v. Baron, No. CIV. 96-7625, 1997 WL 359333, at *6 (E.D. Pa. June 23, 1997). Therefore, the claim is dismissed with prejudice.

    **ii.** *Section 1927*

Section 1927 provides a statutory basis for sanctions in federal court. See 28 U.S.C. § 1927. It provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Id.; see also Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1117 (9th Cir. 2000) (authorizing the imposition of sanctions against "any lawyer who wrongfully proliferates litigation proceedings once a case has

---

[2] Because the bankruptcy case is now closed, Plaintiff may be required to file a motion to reopen pursuant to 11 U.S.C. § 350, which allows for reopening of closed cases for cause. Such a reopening is within the discretion of the bankruptcy judge. It is also the bankruptcy judge's decision whether to order Defendants to pay damages pursuant to § 303(i).

commenced").

Plaintiff's Section 1927 claim fails for several reasons. First, courts have repeatedly held that a judge cannot impose sanctions pursuant to Section 1927 for conduct that did not occur as part of the proceedings in front of that judge. See, e.g., GRiD Sys. Corp. v. John Fluke Mfg. Co., 41 F.3d 1318, 1319 (9th Cir. 1994) ("Section 1927 cannot reach conduct of a party who is not involved in an action before the sanctioning court at the time of the conduct."); Matter of Case, 937 F.2d 1014, 1023 (5th Cir. 1991) ("The language of § 1927 limits the court's sanction power to attorney's actions which multiply the proceedings in the case before the court."); Consumer Fin. Prot. Bureau v. Howard, No. 817-cv-00161-JLS-JEM, 2018 WL 4846920, at *3 (C.D. Cal. Mar. 22, 2018) ("Similarly, a party may not seek sanctions under § 1927 for conduct that occurred in a separate case.").

Additionally, several courts have held that Section 1927 does not provide an independent cause of action. See, e.g., Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 69–70 (2d Cir.1990) ("We have seen no basis for concluding that § 1927 was intended to permit a litigant to institute a new lawsuit to collect excess costs and fees incurred in a prior litigation."); SGM Holdings LLC v. Andrews, 743 F. Supp. 3d 545, 563 (S.D.N.Y. 2024) ("The statute does not create an independent cause of action."). Since this Court lacks authority pursuant to Section 1927 to sanction a party for conduct that occurred in a separate case and Section 1927 does not provide an intendent cause of action, Plaintiff's claim is dismissed with prejudice.

    iii.   *Federal Rule of Bankruptcy Procedure 9011*

Federal Rule of Bankruptcy Procedure 9011 is the corollary of Rule 11 which is intended to deter baseless filings in district court. See In re Deville, 280 B.R. 483, 492 (B.A.P. 9th Cir. 2002), aff'd sub nom, In re DeVille, 361 F.3d 539 (9th Cir. 2004) ("Rule 9011, like its counterpart Federal Rule of Civil Procedure 11, is designed to encourage counsel (and parties) to avoid groundless filings or pleadings filed for improper purposes, largely through the imposition of sanctions."); In re Nakhuda, 544 B.R. 886, 899 (B.A.P. 9th Cir. 2016), aff'd, 703 F. App'x 621 (9th Cir. 2017) ("Case law interpreting Rule 11 is applicable to Rule 9011.").

Fed. R. Bank. P. 9011(c)(1)(A) requires that a request for relief thereunder be made by

separate motion, and states that such motion must describe with particularity the conduct alleged to violate 9011(b). Moreover, before such a motion may be filed or presented to the Court, it must have been served on the party whose conduct is alleged to violate the rule, and such party must be given a minimum of twenty-one days to correct or withdraw the offending pleading, allegation, or denial. FRBP 9011(c)(1)(A); see also Barber v. Miller, 146 F.3d 707, 710 (9th Cir. 1998) (finding that "[a]n award of sanctions cannot be upheld" where the movant does not comply with the 21-day notice requirement).

This claim also fails for a number of reasons. First, several courts have held that Rule 9011 is a procedural rule that does not provide an independent cause of action. See, e.g., In re Akers, 2012 WL 3133924, at *2 (Bankr. D.D.C. Aug. 1, 2012) ("[T]here is no independent cause of action under Rule 9011."); In re Martin, 617 B.R. 866, 874 (Bankr. S.D. Miss. 2020) (same); In re 72nd Street Realty Assocs., 185 B.R. 460, 472 (Bankr. S.D.N.Y. 1995) ("Rule 11 does not create an independent cause of action."). In fact, no federal rule creates a separate cause of action. See Owen Equipment & Excavation Co. v. Kroger, 437 U.S. 365, 370 (1978). Additionally, Plaintiff has not complied with the 21-day safe harbor provision as required by Rule 9011. See In re Deville, 361 F.3d 539, 545 (9th Cir. 2004) (holding that Rule 9011 "does not suffice [to support an award of sanctions] because the victim did not make the requisite motion following compliance with the mandatory 'safe harbor'"); see also Holgate v. Baldwin, 425 F.3d 671, 678 (9th Cir. 2005) (holding that we "enforce [Rule 11's] safe harbor provision strictly"); Winterrowd v. Am. Gen. Annuity Ins. Co., 556 F.3d 815, 826 (9th Cir. 2009) (finding that "[f]ailure to provide the required notice precludes an award of Rule 11 sanctions"). Finally, Plaintiff brought this claim after the conclusion of the litigation. See In re Yagman, 796 F.2d 1165, 1183 (9th Cir. 1986) (noting that "the primary purpose of sanctions, which is to deter subsequent abuses," is not served "by tolerating abuses during the course of an action and then punishing the offender after the trial is at an end"); Islamic Shura Council of S. California v. F.B.I., 757 F.3d 870, 873 (9th Cir. 2014) ("Motions for Rule 11 attorney's fees cannot be served after the district court has decided the merits of the underlying dispute giving rise to the questionable filing."). For all these reasons, Plaintiff's claim pursuant to Federal Rule of Bankruptcy Procedure 9011 is dismissed with prejudice.

### D. Leave to Amend

There are no further facts that would salvage an impermissible assignment of claims to the newly Lagudi-and-Ponder-controlled Fresh Mix. Allowing Plaintiff to proceed on claims arising from their representation of the GFSI-controlled Fresh Mix would be in violation of Nevada public policy. Therefore, Plaintiff is not provided with leave to amend.

### V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants James P. Pisanelli, Pisanelli Bice, PLLC, Ava Marie Schaefer, and Debra L. Spinelli's Motion to Dismiss, (ECF No. 34), is **GRANTED**. The Amended Complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that the remaining motions, (ECF Nos. 42, 46, 51, 53, 57, 81, 86, 109, 119, 122, 124, 129), are **DENIED** as moot.

The Clerk of Court is instructed to close this case and enter judgment accordingly.

**DATED:** March 31, 2025.

                                                                  **RICHARD F. BOULWARE, II**
                                                                   **UNITED STATES DISTRICT JUDGE**